SMITH et al. v. SHENANDOAH VALLEY NAT. BANK OF WINCHESTER, VA., et al.

In re NORWALK MOTOR CO.

(Circuit Court of Appeals, Fourth Circuit. October 22, 1917.)

No. 1528.

1. RECEIVERS ⊚⟶128—CERTIFICATES—LIENS.

Receiver's certificates given for the operation of the business of a private industrial corporation cannot be made to displace prior liens, unless the holders of such liens have waived them, either expressly or impliedly.

2. RECEIVERS ⊚⟶128—CERTIFICATES—PRIORITY—ORDER.

On a bill by two of the officers of a corporation, who had indorsed its note and were protected by a deed of trust, a receiver was appointed by the state court. The order appointing the receiver on the ground of insolvency authorized him to purchase such supplies and raw materials as might be necessary in the course of manufacturing the product of the corporation, and for the purpose of continuing operations to borrow a sum not to exceed $5,000 and execute receiver's certificates, which should be a first lien on the assets of the corporation. The lien creditors waived any rights which they had under the trust deed in priority to the receiver's certificates to be issued. The receiver contracted debts considerably in excess of $5,000. Thereafter the corporation was declared an involuntary bankrupt and its property sold. *Held* that, as indebtedness incurred by a receiver for the carrying on of a business for the private corporation cannot displace prior liens, unless the holders of such liens waived them, it was proper for the bankruptcy court to direct that the proceeds of property not subject to the deed of trust should be applied to the discharge of the receiver's certificates and only the unpaid balance of such certificates liquidated from the proceeds of the sale of the property covered by the deed of trust, for any other procedure would give priority to the receiver's debts as to which the lienholders did not waive their rights.

3. RECEIVERS ⊚⟶128—CERTIFICATES—EQUITABLE ESTOPPEL—WAIVER OF LIENS.

In such case the fact that one of the beneficiaries under the deed of trust and one of the complainants in suit in the state court were engaged by the receiver to assist him in managing the corporation does not charge the lienholders with an implied waiver of their lien to an amount in excess of the $5,000 consented to.

4. BANKRUPTCY ⊚⟶482(3)—ATTORNEY'S FEES—RIGHT TO.

Where a corporate receiver was appointed on the ground of insolvency, and under order of the state court he issued certificates, such certificates were not, the corporation having been adjudicated an involuntary bankrupt, liens on the corporate property when it came into the bankruptcy court, preventing the allowance out of the proceeds of a reasonable fee to the bankrupt's attorney provided for by Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, for all who dealt with the proceedings did so with notice that the corporation was subject to the bankruptcy laws.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern District of West Virginia, at Martinsburg; Alston G. Dayton, Judge.

In the matter of the bankruptcy of the Norwalk Motor Company. Petition by C. G. Smith, receiver of the Norwalk Motor Car Company, and others, to review an order of the referee, opposed by the Shenandoah Valley National Bank of Winchester, Va., and others. From a decree affirming the order of the referee, petitioners appeal. Modified.

H. H. Emmert, of Martinsburg, W. Va. (Downey & Henson and C. E. Williams, all of Martinsburg, W. Va., on the brief), for appellants.

Stuart W. Walker, of Martinsburg, W. Va. (Faulkner & Kilmer, of Martinsburg, W. Va., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge. The Norwalk Motor Car Company, a West Virginia corporation, began to manufacture and sell automobiles in 1911. On December 26, 1912, it gave its note to the Shenandoah Valley National Bank for $20,000, indorsed by G. W. McKown, S. H. McKown, J. M. Rothwell, A. E. Skadden, S. P. Hopkins, and Gray Silver, all of whom were stockholders or executive officers of the company. To secure these indorsers, it executed on the same day its deed of trust covering a large part of its property. On the 14th of October, 1914, under a bill brought by G. W. McKown, who was president, and S. P. Hopkins, who was sales manager, as creditors of the corporation, the circuit court of Berkeley county, W. Va., appointed a receiver of the corporation on the ground of insolvency and directed him to continue the business of the company. The order authorized the receiver "to purchase such supplies and raw material as may be necessary in the course of manufacturing the product of said company." It also authorized the receiver, "for the purpose of continuing the operation of the factory," "to borrow a sum, not to exceed $5,000, and to execute therefor receiver's certificates, which shall be a first lien upon the assets of said company and upon all the funds that may come into the hands of said receiver from any source." It appears from the recitations of the order that the Shenandoah Valley National Bank and the indorsers on the $20,000 note waived any rights they had under the trust deed "in so far as the aforesaid deed of trust may be a prior lien to receiver's certificates which are herein authorized to be issued by said receiver." The receiver's certificates were issued and the proceeds used for the purpose authorized by the order. The receiver contracted debts considerably in excess of the $5,000; but for this excess he had no authority to issue certificates.

On the 9th of February, 1915, the corporation was declared an involuntary bankrupt, and the property was afterwards sold under the orders of the bankruptcy court. The net amount derived from the sale of the property covered by the deed of trust, after deducting taxes and other expenses admittedly chargeable to this fund, was $5,399.58. The net amount derived from the sale of the property not covered by

the deed of trust, after deducting taxes and other expenses admittedly chargeable to this fund, was $3,059.20. The validity of the receiver's certificates issued by the state court was not drawn in question here or in the District Court. The District Court, in affirming the report of the referee, held: (1) That the net amount derived from the sale of the property not covered by the deed of trust should be applied to the payment of the receiver's certificates, and only the unpaid balance of the certificates liquidated from the proceeds of the sale of the property covered by the deed of trust, thus excluding from participation in the proceeds of the property not covered by the deed of trust the debts contracted by the receiver not embraced in the certificates; and (2) that a fee to the attorneys for the bankrupt for services allowed by the statute in the involuntary proceedings in bankruptcy should not be allowed out of the proceeds of the sale of the property in preference to the certificates of the receiver.

[1-3] We think the correctness of the first conclusion depends upon the construction of the order of the circuit court for Berkeley county appointing the receiver and authorizing the continuance of the business and the issuance of the receiver's certificates, and on the terms of the waiver of the lien of the trust deed. The rule is that receiver's certificates given for the operation of the business of a private corporation cannot be made to displace prior liens, unless the holders of such liens have waived them, either expressly or impliedly. The necessity for the continued operation of a railroad induced the Supreme Court of the United States to hold that a court of chancery having charge of railroad property might authorize the issuance of receiver's certificates for operating expenses, which would be a lien prior to the mortgage bonds. Wallace v. Loomis, 97 U. S. 146–162, 24 L. Ed. 895; Fosdick v. Schall, 99 U. S. 285, 25 L. Ed. 339. Though not deciding the point, the court indicates in Wood v. Guarantee Trust Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472, that such a power is not to be extended to receiverships of industrial corporations. Nothing can be added to the reasoning of Judge Caldwell against such authority in case of receiverships of private corporations in Hanna v. State Trust Co., 70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201. The receiver's certificates directed by the order of the state court to be used in the operation of this industrial corporation could have no effect to displace the lien of the deed of trust beyond the waiver of the lien in their favor to the extent of $5,000. The limitation of $5,000 expressed in the waiver negatived any inference of consent to the contracting of debts beyond that amount.

Had there been no waiver, it is clear that the property not covered by the lien of the trust deed would have been liable for the payment of the receiver's certificates issued for debts contracted in operation, and the property under the trust deed would not have been liable. The waiver of the lienholders was not in favor of the unsecured creditors generally, either of the corporation or of the receiver. It was nothing more than an agreement to waive the lien of the mortgage to the extent of $5,000 in favor of the holders of the receiver's certificates, and did not imply an agreement that unincumbered property should not be

first subject to the certificates to the exemption of property under the lien.

It is argued that some, if not all, of the lienholders or beneficiaries under the deed of trust participated in the application for the receivership and knew of the debts contracted by the receiver beyond the certificates in the operation of the plant; and hence they should be held to have assented to his action in contracting the debts not covered by the certificates, and that they are therefore estopped from objecting to the payment of these debts from the mortgaged property. While it is not necessary for us to express an opinion on the point, it may be that when a receiver acts within the authority of the orders of the court in contracting debts and the lienholders knowing of his contemplated action make no objection, they cannot afterwards be heard to say that the debts are not a valid charge upon the property in preference to their liens. In re Erie Lumber Co. (D. C.) 150 Fed. 817; In re Benwood Brewing Co. (D. C.) 202 Fed. 326. But in this case, the waiver of the bondholders to enable the receiver to carry on the business was for the specific amount of $5,000. The order of the court specifying that debts to that amount might be contracted and receiver's certificates issued therefor in the operation of the plant implied that the debt should not be extended beyond that amount. There is no evidence before us sufficient to charge the lienholders with an implied waiver of their lien for any greater amount. It is true that S. P. Hopkins, one of the beneficiaries under the deed of trust and one of the complainants in the suit in the state court, was employed by the receiver as manager of the plant, and he and G. W. McKown, another beneficiary under the deed of trust and also a complainant in the state court, were interested in the Norwalk Distributing Company which undertook to sell the output of the Motor Car Company under the receivership. But this does not prove that these parties consented to making debts beyond the $5,000 represented by receiver's certificates. The District Court properly held that, as between the lienholders and the creditors of the receiver, the property not covered by the trust deed should be first applied to the payment of the receiver's certificates, and that only the balance of the certificates remaining unpaid should be chargeable against the property covered by the lien.

[4] The Bankruptcy Act allows as a claim to be paid before distribution to creditors a reasonable attorney's fee for professional services rendered to the bankrupt in performing the duties required of him. When the assets came into the bankruptcy court, therefore, the property not covered by any lien was subject to the payment of this fee. The question is whether the receiver's certificates issued under authority of the state court were liens on the property when it came into the bankruptcy court which the attorney's fees allowed by law to the bankrupt could not displace. It seems clear they were not such liens. When the corporate property was taken over by the state court and a receiver appointed on the ground of insolvency, all who dealt with the court or with the property did so in the face of the records of that court which gave them notice that the corporation might be thrown into bankruptcy at any moment. All proceedings in the state court were,

therefore, subject to the risk of bankruptcy and its necessary incidents, and one of the necessary incidents of bankruptcy is the allowance of a reasonable attorney's fee to the attorney for services rendered the bankrupt in performing the duties required of him. It follows that the attorney's fee for services rendered the bankrupt under the statute must be deducted from the proceeds of the sale of the unincumbered property before applying them to the payment of the receiver's certificates. While the precise point here under consideration was not involved, the principle is applied in Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, In re Standard Fuller's Earth Co. (D. C.) 186 Fed. 578, and Paine v. Archer, 233 Fed. 259, 147 C. C. A. 265. We express no opinion as to the amount of the fee to be allowed. That is a matter for the District Court, considering the value of the services, the amount of the fund, the amount of fees received in the state court by the same counsel, and any other circumstances.

The result of our reasoning is that the funds in the hands of the court derived from the sale of the unincumbered property should be paid first to such counsel fee as may be allowed by the District Court to the attorneys of the bankrupt, and then to the certificates issued in the state court. The balance of the receiver's certificates remaining unpaid should be paid out of the funds in the hands of the court derived from the sale of the property covered by the deed of trust. The remainder of the proceeds of the sale of the property subject to the lien should be applied to the payment of the note held by the Shenandoah National Bank, secured by the trust deed, to the exclusion of those claiming to be general creditors of the receiver in the state court.

The decree of the District Court must be modified accordingly.