BEET GROWERS SUGAR CO. v. COLUM-
BIA TRUST CO. et al. (Hashi-
moto, Intervener).

(Circuit Court of Appeals, Ninth Circuit. Jan-
uary 5, 1925.)

No. 4249.

1. Receivers ⬚135—Sale by general federal
receiver held not subject to redemption under
state statute.

Where a receivership for a corporation in
a federal court in a foreclosure suit, by consent
of defendant, was converted into a general re-
ceivership for the purpose of winding up the
affairs of the corporation, a sale of its property
by the receiver under an order made after a
full hearing is not required to be made subject
to redemption within one year because of a
state statute giving that length of redemption
from a foreclosure sale, and especially where
the sale includes personal as well as real prop-
erty which is sold as a unit.

2. Receivers ⬚31—Assent to appointment by
corporation defendant subjects it to the ex-
ercise of all the equity powers of the court.

By consenting to the appointment of a gen-
eral receiver, a defendant corporation assents
to the exercise by the court of all of its equity
powers in receivership cases.

3. Receivers ⬚135—Company ordered to de-
sist from combining to maintain monopolies
held not disqualified to purchase property at
receiver's sale.

A sugar company, ordered by the Federal
Trade Commission to desist from combining
and conspiring with others to maintain monopo-
lies, held not disqualified to become purchaser
of factory and property of another sugar com-
pany at receivership sale.

Appeal from the District Court of the
United States for the Eastern Division of
the District of Idaho; Frank S. Dietrich,
Judge.

Suit in equity by the Columbia Trust
Company, trustee, against the Beet Grow-
ers' Sugar Company, in which E. D. Hashi-
moto intervened, and A. V. Scott was ap-
pointed receiver. From an order of sale
and order confirming sale, defendant ap-
peals. Affirmed.

The appellant was incorporated with an
authorized capital stock of $5,000,000, with
400,000 shares of common stock of the par
value of $2.50 per share, and 400,000 of
preferred stock of the par value of $10 per
share. About one-half of the common
stock and approximately one-third of the
preferred stock was issued. The Columbia
Trust Company was the trustee named in
a trust deed executed by the appellant cov-
ering all of its property, real, personal,
and mixed, to secure an authorized issue of
bonds amounting to $500,000, bearing inter-

est at 7 per cent. per annum. Some of
the bonds were sold, but the majority of
them were delivered as collateral. The trus-
tee brought a suit to foreclose, and praying
for the appointment of a receiver to take
possession of the mortgaged property pend-
ing foreclosure and during the period for
redemption allowed to the defendant and
its creditors, if any, with authority to take
possession of said property and receive the
rents, issues, and profits thereof, and to
release and/or operate all or any part there-
of under the orders of the court under that
provision of the trust deed providing that
the trustee should be entitled to the ap-
pointment of a receiver with such power as
the court might confer. In its answer the
appellant consented to the appointment of
a receiver. A receiver was accordingly ap-
pointed. Hashimoto, a holder of shares of
the preferred stock of the appellant, was
permitted to intervene, and he alleged in
his complaint in intervention in substance,
that he represented an association of pre-
ferred stockholders which had been organ-
ized for the purpose of acting in concert to
protect the interests of all preferred stock-
holders; that the value of the appellant's
assets did not exceed $1,200,000, and that
its debts, secured and unsecured, amounted
approximately to $600,000, and that, after
the payment of the debts, there was no
equity or value in the mortgaged property
for division among common stockholders;
that the preferred stockholders were enti-
tled to 7 per cent. cumulative dividends be-
fore there could be distribution of dividends
to the common stockholders and had the
preference arising out of any sale of the
property to satisfy cumulative dividends
and the principal investment up to the par
value of the shares before any distribution
could be made to the common stockholders.
He alleged also that since the appointment
of the receiver the board of directors of
the appellant had ceased to function, and
disputes had arisen between groups of
stockholders, and that no one was vested
with power to determine the rights and pri-
ority of the preferred stockholders or to
determine the rights of the conflicting
groups of stockholders; that the good will
of the business was of great value, and
would be dissipated and lost unless con-
tracts were made for the season of 1923
with beet growers in the adjacent territory;
that many of the common creditors of the
appellant held a part of the bonds secured
by the trust deed as security for their
claims, and in many instances the amount

of bonds so held was twice or three times the amount of the entire indebtedness due from the corporation to its creditors; and that such creditors were proceeding to sell the bonds so pledged. It was further alleged that a portion of the bonds had been wrongfully taken by officers of the company who held the same to protect alleged personal claims against the appellant. The complaint in intervention prayed that, pending final decree, the receivership be extended and the receiver be given the powers of a general and operating receiver, and that all creditors be required to present their claims for determination in the suit.

On February 26, 1923, it was decreed that the complaint in intervention be taken pro confesso as to the trustee, the appellant, and the receiver. In answer to the petition of the intervener to sell the property of the appellant the latter admitted that the intervener's complaint was filed with the intention and for the purpose of winding up the affairs of the appellant by sale of its property. A hearing was had after notice to all parties to the suit, and thereupon the powers of the receiver were enlarged as prayed for. Under the order so enlarging his powers the receiver called for claims of creditors against the appellant, and gave notice to creditors to present their claims within 60 days, and thereafter, under the order of the court, he advertised for bids for leasing the property for the sugar-making campaign of the year 1923, and farmers made contracts with him to grow beets to supply material. The necessary funds were advanced by the association of preferred stockholders, and in September, 1923, a lease was made by the receiver to the association of preferred stockholders under which the factory was operated during the fall of 1923, and a similar lease was made for the season of 1924. On December 28, 1923, the trial court rendered a decision in which it was said: "It is apparent that the common stockholders and the company, in so far as it represents only the common stockholders, have no real interest in the question of whether the sale be made with or without redemption, for the aggregate of the secured claims, the unsecured claims, the taxes, and the unpaid expenses of the receivership and of the trustee, taken together with the amount of outstanding preferred stock, which must be paid before anything could go to the common stock, will very greatly exceed the amount, which there is any reason to expect could be gotten for the property at a sale, either with or without redemption." In brief, it was the conclusion of the court that a receiver's sale without redemption should be made at an upset price. A hearing was ordered to be held on January 7, 1924, and the receiver and the appellant's auditor were directed to determine the total amount of the unsecured claims and report to the court. On January 19, 1924, the court invited suggestions from all parties of record, and a draft of a proposed order of sale by the receiver was served on each party. On January 25, 1924, the court made an order for a sale by the receiver, fixing the upset price at $650,000. In the order it was recited: "And it further appearing that it will be necessary to sell all of the property of the defendant Beet Growers' Sugar Company to pay said indebtedness, and that said property constitutes a single operating unit, and should be sold together in one parcel, and that, in view of the status and exigencies of the case, a better price can in all probability be gotten by the receiver than by a master upon foreclosure sale, and that by a receiver's sale the rights of all parties interested may be more fully protected, * * * and it being thought that the upset price so fixed will be sufficient to cover all indebtedness of the company, and that therefore in addition to the company the only interested parties are the preferred stockholders, who have rights and interests that the company may not be willing or able to protect, and it also having been shown that it is highly important that the sugar company be kept a going concern and that it operate each year, and that to that end it is necessary to contract with farmers for the raising of sugar beets, beginning about February 1st of each year for the season's run of the current year, and that therefore a period of redemption longer than six months would extend into the 1925 season, and hence jeopardize operations for that year, it is further ordered that the said sale be made subject to the right of redemption, such right to be exercised within six months following the date of the approval of the sale." By the terms of the order a redemptioner was required to pay the purchaser not only the purchase price which the purchaser paid for the property, but interest thereon at 10 per cent. from the date of approval of the sale, and, in addition thereto, the sum of $15,000.

On March 1, 1924, the property was sold for $800,000. The sale was confirmed, and, there having been no redemption, convey-

ances of the property were executed and delivered by the receiver. The appeal is taken from the order of sale of January 25, 1924, as amended by the supplemental order of February 7, 1924, and from the order of March 15, 1924, confirming the sale.

Samuel A. King, Russell G. Schulder, and Thomas Marioneaux, all of Salt Lake City, Utah, for appellant.

Wm. Story, Jr., of Salt Lake City, Utah, for appellee Columbia Trust Co.

James H. Hawley, Jess Hawley, and O. W. Worthwine, all of Boise, Idaho, for appellees Scott and another.

Dey, Hoppaugh & Mark, of Salt Lake City, Utah, for intervener.

Otto E. McCutcheon and O. E. McCutcheon, both of Idaho Falls, Idaho, for receiver.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant contends that under the statutes of the state of Idaho it is entitled to one year in which to redeem from the sale and that the right so given by the state law is a property right which will be enforced in the federal courts, citing Brine v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858. It may be conceded that, if the right to redeem in the present case is conferred by the local statutory law, it will be recognized in a federal court. It does not follow that a federal court may by a state statute be deprived of any of its general equity powers. Guffey v. Smith, 237 U. S. 101, 114, 35 S. Ct. 526, 59 L. Ed. 856. The right so given by the statute of Idaho is a right incident to a sale of land on execution and to a sale on foreclosure of a mortgage. In the case of a mortgage the right does not come into existence until a foreclosure sale has been made. Here no foreclosure sale has been decreed or made. The receiver was appointed with the consent of the appellant, and the suit was converted into a general receivership to protect and determine the rights of all parties to the suit and to wind up the appellant's affairs. To this procedure the appellant consented, and it made no objection to the allowance of the order for the enlargement of the powers of the receiver. No question can be made of the power of the court in such a case to direct a receiver's sale with or without redemption. It was so held in Hewitt v. Walters, 21 Idaho, 1, 119 P. 705, Ann. Cas. 1913C,

35. In that case the court said: "It is conceded that the statute of this state nowhere in express terms grants the right of redemption from a receiver's sale." The facts on which the right of redemption in that case was denied by the court were that the appellants had presented their claims in the receivership and asked that the same be allowed and that they be accepted as creditors of the corporation which was in the hands of the receiver, whereby they became bound by the judgment and orders in the receivership case, and, as the court said, they were subject to the court's order directing the sale of the property without the right of redemption. Said the court: "The sale here being made is not a sale on foreclosure but is a sale by the court's receiver under direct authority and supervision of the court. The plaintiff has consented to and acquiesced in the order and decree, and is now bound thereby."

[2] The appellant, by way of distinguishing that case from the case at bar, adverts to the fact that in the latter case it made objection in the court below to the proposed decree and the proposed order of sale by the receiver, but those facts, we think, do not affect the principle here involved. The controlling fact is that the appellant assented to the appointment of the receiver and the enlargement of his powers. In so assenting it must be held to have subjected itself to the orders and judgment of the court in the exercise of all its inherent powers in a receivership case. Here there was substantial reason why the sale should be made by a receiver rather than under a foreclosure sale of the mortgage, for personal as well as real property was in the hands of the court, which, as the court found, all comprised parts of a single working plant or utility, "to wit, a sugar factory in which each part was necessary to give value to the others, and where dismemberment of the system would greatly impair the usefulness or value of its component parts." There would have been no right to redeem the personal property from a sale of foreclosure.

It is true that the corporation here involved was neither a public nor a quasi public corporation, and does not come within the rule of the cases holding that as to such corporations a statute conferring a right of redemption from sales of real estate does not apply to sales of the entire property of a railroad company, a water company, a telegraph, telephone, or electric light and gas company, in which cases the

sale may be made as an entirety and without redemption. Hammock v. Farmers' Loan & Trust Co., 105 U. S. 77, 26 L. Ed. 1111; Pacific Northwest Packing Co. v. Allen, 116 F. 312, 54 C. C. A. 648; Continental & Commercial Trust Co. & Savings Bank v. Corey Bros. Const. Co., 208 F. 976, 126 C. C. A. 64. But the reasoning which sustains the rule in that class of cases is not inappropriate to the present case, for it is shown that to sell the real estate separately from the other properties involved in the present case would disastrously affect the interest of parties interested therein. The cogency of that reasoning was recognized by the court in National Bank of Commerce v. Corliss, 217 Mich. 435, 186 N. W. 717, a case which involved a creamery company's property consisting of real, personal, and intangible values arising out of milk routes and farmers' patronage.

The appellant cites Locey Coal Mines v. Chicago, Wilmington & Vermilion Coal Co., 131 Ill. 9, 22 N. E. 503, 8 L. R. A. 598, where in construing the statute of Illinois providing for the redemption of real estate sold under execution judgment or decree of foreclosure of a mortgage, etc., the court held that the language was imperative and seemed to contemplate no exceptions, and that it was applicable to a sale under a creditor's bill brought to enforce the collection of a certain judgment at law against a corporation. The court found distinguishing features of the case in the fact that no personal property was involved, the severance of which from the real estate would materially impair the value or usefulness of the latter, and the fact that no question was involved of any public use or any public interest in the continued operation of the mines. The court said: "Every circumstance which may be held to take the case out of the operation of the statutory mandate which requires judicial sales of real property to be made subject to the statutory right of redemption seems to be wanting." In a later case, however (Blair v. Illinois Steel Co., 159 Ill. 350, 42 N. E. 895, 31 L. R. A. 269), the same court sustained a sale of property in a suit to dissolve a corporation under an order which directed that the property be sold by the receiver without redemption. The court distinguished the Locey Coal Mines Case by pointing to the fact that the sale there involved was one made simply under a decree upon a creditor's bill to cover the collection of a judgment at law, or, in other words, was one for the payment of money, and that the creditor's bill was to be regarded only as a species of process for the execution of a judgment at law, and observed that the statute upon which the decision in that case was based had no application to a decree for the sale of real estate ordered to be made by the receiver in a suit in equity for the purpose of dissolving an insolvent corporation and closing up its business.

[3] The appellant, in the court below, objected to the confirmation of the sale on the ground that the purchaser, the Utah Idaho Sugar Company, was not a competent bidder and was without the right to become a purchaser at the sale for the reason that on October 3, 1923, in an action before the Federal Trade Commission, a judgment and restraining order were made and entered by the terms of which the said corporation and others jointly charged with conspiracy were commanded to cease forever and desist from combining or conspiring to maintain certain monopolies and prevent the establishment of sugar enterprises and the building of sugar factories by persons and interests other than the respondents in said proceeding, and from hindering or obstructing competitors or prospective competitors from engaging in the purchase of sugar plants and in the manufacture or sale of sugar in interstate commerce. It was objected that to permit the said corporation to purchase the appellant's property was to violate the findings and judgment of the commission. The same objections are here urged as ground for reversing the decree of the court below. We can find nothing in the judgment of the Federal Trade Commission which disqualifies the Utah Idaho Sugar Company to become a bidder and purchaser at the sale. The fact of the purchase by that company could tend in no way to effectuate the things which it was restrained from doing by the judgment of the Commission. There is nothing to indicate that the purchaser at the sale was acting in combination with others or otherwise in violation of the terms of the Commission's judgment. The corporation was forbidden to purchase land and erect factories "when such purchases or erections are not done in good faith." There is no charge or finding here that the purchase was not made in good faith.

The decree is affirmed.